■ In the Matter of Lafayette Boynton Hsg. Corp., Appellant, v Ronald Pickett, Respondent. [23 NYS3d 204]—

Order of the Appellate Term of the Supreme Court, First Department, entered on or about August 22, 2014, which affirmed an order of the Civil Court, Bronx County (Javier E. Vargas, J.), entered on or about October 8, 2013, granting respondent tenant's motion to, among other things, be restored to possession of the subject apartment upon his payment of $14,030.59 to petitioner landlord by a specified date, affirmed, without costs.

We reject the landlord's contention, premised on RPAPL 749 (3), that the Civil Court lacked the authority to grant the tenant's post-eviction motion (*see Matter of Brusco v Braun*, 84 NY2d 674, 682 [1994]; *see also Parkchester Apts. Co. v Scott*, 271 AD2d 273, 273 [1st Dept 2000]). "[T]he Civil Court may, in appropriate circumstances, vacate the warrant of eviction and restore the tenant to possession even after the warrant has been executed" (*Brusco*, 84 NY2d at 682; *see also Harvey 1390 LLC v Bodenheim*, 96 AD3d 664, 664 [1st Dept 2012]). Here, the Civil Court providently exercised its discretion, as the record shows that the long-term, disabled tenant "did not sit idly by[,]" but instead made appreciable payments towards his rental arrears and "engaged in good faith efforts to secure emergency rental assistance to cover the arrears" (*Harvey*, 96 AD3d at 665; *see also Parkchester*, 271 AD2d at 273-274). Moreover, the tenant has paid the rental arrears for the unit and the landlord's costs for the underlying proceeding (*see Parkchester*, 271 AD2d at 273), and the record shows that the delays in payment were, to a certain extent, attributable to others, including the landlord (*see 2246 Holding Corp. v Nolasco*, 52 AD3d 377, 378 [1st Dept 2008]). Concur—Mazzarelli, J.P., Acosta and Richter, JJ.

Saxe, J., concurs in a memorandum as follows: Previous case law supports and justifies the majority's affirmance of the order on appeal, which restored the evicted tenant to possession upon full payment of all overdue arrears. However, I write separately to express two concerns. First, the way in which the case law has developed with regard to vacating warrants of eviction after those warrants have already been executed, prompts me to question the underpinnings and validity of recent case law on the subject. My other concern focuses on how the law, unfairly, forces landlords to serve as de facto no-interest lenders to low-income tenants who rely on the slow process of obtaining grants and supplemental payments to help cover their rent.

The tenant in this case, who is disabled, has resided at the subject apartment for more than 30 years, and the source of his income is Supplemental Security Income from the Social Security Administration. The landlord commenced this nonpayment proceeding on October 5, 2011, and the proceeding was not ultimately resolved until two years later, *after the tenant had already been evicted*, when the tenant's rental arrears were finally paid up in October 2013 and the tenant restored to possession.

The litigation process during much of those two years was

typical. Although nonpayment proceedings are contemplated as summary proceedings, created "to afford landlords an *expeditious* means of recovering real property from tenants who refused to remit rent after a demand" (Daniel Finkelstein & Lucas A. Ferrara, Landlord and Tenant Practice in New York § 14.1 at 132 [West's NY Prac Series, vol G, 2014] [emphasis added]), in cases such as this, litigation can extend for months. If the tenant agrees that rent arrears are due and owing, and that he or she lacks a viable defense to the nonpayment proceeding, that tenant often enters into a stipulation acknowledging the rent arrears and creating a payment schedule (*id.* at § 14:418 at 331), as well as "provid[ing] for the entry of a money judgment and a final judgment of possession in the landlord's favor, with the issuance of a warrant of eviction 'forthwith,' and its execution stayed pending the tenant's compliance with the agreement's terms" (*id.* at § 14:425 at 333). Under the stipulation, if the tenant fails to make the agreed-on payments, the money judgment and judgment of possession will become enforceable based on the expiration of the stay, and the warrant of eviction may be turned over to the City Marshall to be executed after 72 hours' notice is given to the tenant (*id.* at 14:471 at 358-359; *see* RPAPL 749).

What often happens thereafter is that the tenant finds that the agreed-upon schedule did not provide sufficient time to obtain the necessary funds. When elderly or disabled low-income tenants have difficulty covering their expenses with their income, they may seek to obtain charitable grants, supplemental payments by the New York State Department of Social Services (DSS), "one shot deals"* from the New York City Human Resources Administration (HRA) and the like. However, the process by which such funds are applied for and obtained is sometimes slow and laborious. The tenant therefore applies to the court for an extension of the stay.

Here, the tenant entered into a stipulation of settlement agreeing to the issuance of a warrant of eviction, to be stayed for a period of time to allow him time to pay the rent arrears, which were initially $5,250.60. Thereafter the tenant brought seven motions seeking stays of the warrant of eviction and additional time to pay the ever-accumulating arrears. The tenant was repeatedly granted extensions and stays of eviction on

---

* The New York City Human Resources Administration offers a "One Shot Deal" emergency assistance program to help people who "cannot meet an expense due to an unexpected situation or event" (*see* One Shot Deal Short Term Emergency Assistance, http://www1.nyc.gov/nyc-resources/service/1205/one-shot-deal-short-term-emergency-assistance [accessed Dec. 11, 2015]).

condition that he pay the arrears by a new set date, each extension based on showings that charitable grants, payments by the DSS or "one shot deals" from the HRA had been approved for payment. However, by the time those promised payments were eventually made, new arrears had accrued, so the landlord was still not made whole by those eventual payments, and the cycle of extensions and only partial payments continued.

The aspect of this case that concerns me is what occurred after the court denied any further stays on August 15, 2013 and allowed execution of the warrant of eviction, explaining that the tenant had "utterly failed to show any ability to pay the longstanding arrears which now amount to $12,370.00" and "merely rehashes all arguments and provides stale evidence of payments long credited." The eviction took place on September 13, 2013. Then, although the court denied the tenant's first two post-eviction motions to stay the landlord from re-letting the apartment, it later granted yet another post-eviction motion by the tenant to stay the landlord from re-letting, upon the tenant's tender of $7,539 in open court. The tenant was restored to possession upon his tender of an additional $7,515.21 before October 23, 2013, which constituted a final payment of all sums then owed to the landlord.

Appellate Term affirmed, holding that the Civil Court had not abused its discretion in vacating the warrant of eviction and conditionally restoring the tenant to possession of the apartment upon his payment of all rent arrears, eviction costs, and attorneys' fees then due. Appellate Term observed that the record established good cause for the relief, because the tenant had tendered a substantial portion of the rent arrears and demonstrated that various agencies had committed funds. Appellate Term also remarked that the landlord had contributed to some of the delays in resolving the rent claim, by losing the checks tendered by DSS on tenant's behalf, which then had to be reissued. Lastly, Appellate Term explained that the protracted nature of the proceedings did not warrant forfeiture of the tenancy, given tenant's good faith and ultimately successful efforts to make landlord whole by securing emergency rental assistance and tendering the rent arrears and landlord's litigation costs, including attorneys' fees. This Court affirms.

In its appeal to this Court, the landlord correctly points out that while RPAPL 749 (3) authorizes the vacatur of warrants of eviction "for good cause shown" *before* the warrant is executed, the statute does not authorize the *post eviction* vacatur of warrants of eviction that have already been

executed. However, while RPAPL 749 (3) does not provide for any post-eviction remedies for an eviction, the Court of Appeals has affirmatively stated that courts may grant such relief, even after a warrant of eviction has been executed. In *Matter of Brusco v Braun* (84 NY2d 674 [1994]), it said, "the Civil Court may, in appropriate circumstances, vacate the warrant of eviction and restore the tenant to possession even after the warrant has been executed" (*id.* at 682). So, while the statute may not give the Civil Court the authority to vacate an already-executed warrant of eviction, case law provides that authority.

However, *Brusco* did not address what "appropriate circumstances" might entail. Notably, *Brusco* did not involve an evicted tenant restored to possession. The decision's acknowledgment that a tenant may be restored to possession after a warrant of eviction has been executed was simply one item in a list of ways that the law protects tenants against unjust or erroneous eviction. Its sole citation in support of that proposition was *Solack Estates v Goodman* (78 AD2d 512 [1st Dept 1980]). In *Solack Estates*, an elderly tenant was evicted pursuant to a default judgment obtained while she was on vacation in Florida; she was restored to possession when it was established that she had timely sent her rent checks, albeit to an outdated address. That decision concluded that "[u]nder the circumstances, the Civil Court was correct in vacating the warrant of eviction and restoring the tenant to her apartment" (*id.* at 513). More recently, this Court echoed *Brusco*'s pronouncement of the "appropriate circumstances" test, in a case that did not involve a post-eviction situation (*see Harvey 1390 LLC v Bodenheim*, 96 AD3d 664, 665 [1st Dept 2012]). The legal standard these cases provide regarding whether to restore a tenant to possession *after* an eviction is that of "appropriate circumstances."

Because the statutory standard of proof to vacate a warrant of eviction *before* the warrant is executed is "for good cause shown" (RPAPL 749 [3]), one might expect that a more exacting standard should be employed where a tenant seeks to be restored to possession *after* eviction, since the landlord-tenant relationship had already been terminated at that point, eliminating the tenant's rights to reside in the leased premises. Yet, a number of cases of this Court have imported the "good cause" standard that RPAPL 749 (3) provides for vacating unexecuted warrants of eviction, and have applied it to already executed warrants of eviction so as to restore tenants to possession; some cases have also adopted an "abuse of discretion" standard of review of such trial court decisions. For example,

in *102-116 Eighth Ave. Assoc. v Oyola* (299 AD2d 296 [1st Dept 2002]), we affirmed an order restoring a tenant to possession upon payment of all rent arrears. Without describing the facts of the case, we said that "[u]nder the particular facts and circumstances . . . Civil Court properly exercised its discretion and for good cause vacated the warrant of eviction so as to restore respondent to possession of the subject premises" (*id.* at 296).

Similarly, in *Parkchester Apts. Co. v Scott* (271 AD2d 273 [1st Dept 2000]), this Court upheld the grant of a tenant's post-eviction application to be restored to possession, observing that the tenant's motion had been accompanied by proof of payment of the balance due on the judgment against him, plus additional accrued rent. In the remaining brief discussion, the decision imports to this post-eviction situation the "good cause" standard of RPAPL 749 (3): "good cause to support the Civil Court's vacatur of the warrant of eviction was demonstrated through proof from the 63-year-old tenant that, notwithstanding recent illness, he made appreciable payments towards the judgment and, while a tenant for 20 years, had apparently had no prior delinquency record and, prospectively, had arranged for automatic withdrawal of monthly rent from his bank account" (*id.* at 273-274).

To sum up: the initial case law that allowed already-evicted tenants to be restored to their tenancy applied a standard of "appropriate circumstances," while subsequent cases permit a tenant's restoration after eviction for "good cause shown," which standard is satisfied by good faith and eventually successful efforts by a long-term tenant to satisfy his or her rent obligation, despite hardships. In addition, some recent cases suggest that on appeal the trial court's decision must be given the substantial latitude of an abuse of discretion standard of review.

Appellate Term here, like this Court in *102-116 Eighth Ave. Assoc. v Oyola* (299 AD2d at 296) and like Appellate Term in *Three In One Equities LLC v Santos* (43 Misc 3d 142[A], 2014 NY Slip Op 50847[u] [App Term, 1st Dept 2014]), seems to have cited all of the foregoing standards.

I submit that we should reconsider the standard of proof necessary to vacate an already-executed warrant of eviction.

When the posture of the litigation is that a warrant of eviction was issued based on conceded rent arrears, but was stayed to give the tenant time to obtain the overdue funds from any available sources, the "good cause" standard of RPAPL 749 (3) makes perfect sense. This Court has observed, "[t]he policies

underlying the rent stabilization laws are generally better served by holding out to a tenant the opportunity usually afforded in a nonpayment proceeding to cure the breach of his rent obligations" (*2246 Holding Corp. v Nolasco*, 52 AD3d 377, 378 [1st Dept 2008]). Focusing on the facts of *2246 Holding*, this Court explained that "[r]espondent's multiple defaults were largely the result of a delay in payment by HRA. Petitioner was aware, at the time of the settlement, that a portion of the amount due was to be paid by HRA. An indigent tenant who resides in an apartment for many years should not be evicted where she has made diligent efforts to comply with the terms of the settlement agreement, only to be stymied by events beyond her control" (52 AD3d at 378).

Facts such as these constitute sufficient and appropriate grounds for staying and vacating warrants of eviction that have not yet been executed. But since a completed eviction ordinarily terminates the tenant's interest in the property and entitles the landlord to treat the previously-rented premises as its own, a court should not undo that eviction, unless the tenant makes a showing of something more than the type of "good cause" that justifies vacating an unexecuted warrant.

For an example of the type of greater showing that should be required, we must return to the case *Brusco* relied on for the proposition that an executed warrant of eviction may be vacated, *Solack Estates*. The showing in *Solack Estates* justified reversing an already-executed warrant of eviction and restoring the evicted tenant to possession, because the evicted tenant there showed that the basis for the landlord's underlying claim—nonpayment of rent—was incorrect (although neither fraudulent nor based on perjury) (78 AD2d at 513). Instead, her rent payments had been sent, as she had done previously, to an address that had been superseded (*id.*). The finding of an error in the allegations supporting the issuance of a warrant of eviction certainly justified vacating that warrant and restoring the tenant to possession.

In contrast, a showing that after he was evicted, the evicted tenant has, at long last, succeeded in pulling together funds from enough sources to pay off arrears that accumulated over a two-year period, does nothing to show that the factual premise for the eviction was incorrect. It comports with recent case law, but it should not be enough.

I submit that to undo an eviction, the tenant should be required to satisfy more stringent criteria than the type of "good cause" that justifies vacating an unexecuted warrant. Rather, the tenant's showing should be of the type of circum-

stances contemplated in *Brusco* and *Solack Estates*; that is, that incorrect assumptions or findings were made in issuing the warrant of eviction that undermines the basis for its issuance in the first place. And, the appellate standard of review of such an order should be stricter than the broad abuse of discretion standard.

Finally, I feel compelled to recognize the involuntary and unacknowledged burden cases such as this place on landlords. While the tenant's rent arrears are eventually paid, and the landlord reimbursed for its legal costs for the underlying proceeding, the landlord is not made whole. Since it has no choice but to wait however long it takes for the rent to be fully paid—here, the landlord waited two years—without any interest being paid on the unpaid rent, it is in effect forced to underwrite the tenancy.

Important public policy considerations necessitate ensuring that elderly and disabled low-income tenants are not made homeless because of the normal delays in the issuance of funds from social service agencies that these tenants regularly rely on to help make up shortfalls in their ability to keep up with their monthly rent. It is shameful, however, that we are relying on the private property owners who happen to rent apartments to such tenants, requiring them to cover the shortfall for months, or even years, rather than, as a society, making sure that elderly and disabled low-income tenants have access to the necessary funds *in a timely manner* so they can stay current on their rent.